839 S.W.2d 144 (1992)
In the MATTER OF E.Q., Appellant.
No. 3-91-474-CV.
Court of Appeals of Texas, Austin.
October 14, 1992.
Fancy H. Jezek, Holbrook & Jezek, Killeen, for E.Q.
*145 Patrick J. Ridley, County Atty., Scott K. Stevens, Asst. County Atty., Belton, for the State.
Before CARROLL, C.J., and JONES and KIDD, JJ.
CARROLL, Chief Justice.
The district court, sitting as the juvenile court,[1] found that E.Q. engaged in delinquent conduct and committed him to the Texas Youth Commission for a determinate sentence of fifteen years. We find that the trial court erred in denying E.Q.'s motion for new trial, as his pleas of "true" were not freely and voluntarily given. Accordingly, we will reverse the judgment of the trial court and remand this cause for further proceedings with instructions that E.Q. be allowed to withdraw his pleas of "true" and be granted a new trial.

BACKGROUND
E.Q., a minor, was charged with aggravated kidnapping and aggravated sexual assault. The State initiated proceedings for an adjudication of delinquency and imposition of a determinate sentence under the provisions of the Family Code. Tex. Fam.Code Ann. §§ 53.045, 54.04(d)(3), & 54.11 (West Supp.1992). During plea-bargain negotiations, E.Q.'s attorney and the prosecutor discussed the applicability of plea agreements to juvenile proceedings and the opportunity to withdraw the plea if the court did not follow the sentencing recommendation.
Based on discussions with the prosecutor, E.Q.'s attorney advised E.Q. that plea bargaining was available but was not binding on the trial court, and that the pleas could be withdrawn if the court did not follow the prosecutor's recommendation. In reliance on this information, E.Q. entered into a plea agreement. The agreement provided that E.Q. would waive his right to a jury trial and his privilege against self-incrimination and plead "true" to two of the allegations in the State's original petition in exchange for the State making a recommendation for a determinate sentence of only five years. Significantly, the stipulation of evidence, which was the only evidence of E.Q.'s guilt, included the terms of the plea agreement.
The trial court accepted E.Q.'s pleas of "true" and the stipulation of evidence, but refused to follow the sentencing recommendation of the prosecutor. Instead, the court assessed a determinate sentence of fifteen years. E.Q. moved to withdraw his pleas. The court denied this motion and E.Q. filed a motion for new trial.
At the hearing on the motion for new trial, E.Q. testified that he pled "true" based on the five year recommendation, and that he understood that he could withdraw his pleas and "start over" if the judge assessed a penalty greater than the recommendation. E.Q.'s attorney testified that she and the prosecutor had discussed the right of a juvenile to withdraw a plea, that the law was unsettled, and that they saw no reason for the trial court not to allow the pleas to be withdrawn if the court did not follow the sentencing recommendation. Finally, she testified that she had advised E.Q. that he would be able to withdraw his pleas if the court assessed a sentence greater than five years.
E.Q. brings four points of error on appeal. The first three concern the trial court's rulings on E.Q.'s pleas of "true" at various points in the proceedingsthe acceptance of the pleas, the denial of the motion to withdraw the pleas, and the denial of the motion for new trial. All three are based on the argument that the pleas were not knowing and voluntary. The fourth point of error challenges the trial court's alteration of the plea agreement.

DISCUSSION AND HOLDING
We recognize that there are conflicting interests involved in the prosecution of violent juveniles. The state has an interest in providing for the care, protection, and development of its children as well as an *146 interest in providing for the protection of the general population. The civil juvenile justice system was established in part to insulate minors from the harshness of criminal prosecutions, to promote rehabilitation over punishment, and to eliminate the taint of criminal conviction after incarceration by characterizing such actions as delinquent rather than criminal. See generally Lanes v. State, 767 S.W.2d 789, 791-800 (Tex.Crim.App.1989) (historical discussion of juvenile justice policy). However, the acts of juveniles are often as violent and reprehensible as those of any adult criminal.
The criminal system has the goals of maintaining our societal structure and protecting the safety of citizens by punishing persons who violate basic rules of conduct. See In the Matter of R.L.H., 111 S.W.2d 697, 701 (Tex.App.Austin 1989, writ denied). A primary purpose of the juvenile justice system is "to provide for the care, the protection, and the wholesome moral, mental, and physical development of children...." Tex.Fam.Code Ann. § 51.01(1) (West 1986). The goals of these two systems conflict when applied to a young person who commits violent acts. The state is faced with a difficult choice between the youth's welfare and the protection and punishment interests of the general public.
In an attempt to deal with violent juvenile offenders in a way that balances the conflicting interests, the legislature enacted the determinate sentencing statutes. See generally Robert O. Dawson, The Third Justice System: The New Criminal System of Determinate Sentencing for the Youthful Violent Offender in Texas, 19 St. Mary's L.J. 943 (1988). These provisions provide an alternative to the existing criminal and juvenile systems. If the juvenile court finds that a juvenile has committed one of six offenses set out in section 53.045(a) of the Family Code, it may impose a determinate sentence of up to forty years. Tex.Fam.Code Ann. §§ 53.045(a), 54.04(d)(3) (West Supp.1992). Initially, the delinquent youth is committed to the Texas Youth Commission. Shortly before the youth reaches eighteen, the juvenile court reevaluates the youth. Tex.Fam.Code Ann. § 54.11(h) (West Supp.1992). The court may either parole the youth at eighteen or order a transfer to the Texas Department of Criminal Justice for the balance of the sentence. Tex.Fam.Code Ann. § 54.11(i) (West Supp.1992).
Although juvenile delinquency proceedings are civil in nature, they have been characterized as quasi-criminal with procedural protection and due-process requirements similar to those in adult criminal prosecutions. In the Matter of R.J. W., 770 S.W.2d 103 (Tex.App.Houston [1st Dist.] 1989, no writ); In re D.B., 594 S.W.2d 207, 209 (Tex.Civ.App.Corpus Christi 1980, no writ). The hybrid nature of these proceedings results in gaps and ambiguities between the civil and criminal law. We are now faced with one of those gaps. An adult criminal defendant accused of a felony has a right to withdraw a guilty plea entered pursuant to a plea agreement if the trial court does not follow the agreed sentencing recommendation. Tex.Code Crim. ProcAnn. art. 26.13 (West 1989). We believe that if an adult criminal defendant would have this right, then a juvenile, whose alleged actions would constitute a felony if he or she were tried as an adult, is entitled to the same right of plea withdrawal in a juvenile proceeding. However, we need not create a new procedural protection for juveniles to resolve this appeal.
Plea agreements are valid only if voluntary and made knowingly and intelligently with "sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In the instant case, E.Q. relied on representations of his counsel and of the prosecutor, transmitted by his counsel, that he could withdraw his pleas of "true" if the trial court failed to follow the prosecutor's recommendation.
In McGuire v. State, 617 S.W.2d 259 (Tex.Crim.App.1981), the prosecutor promised a pro se defendant that the State would recommend a particular punishment, and that the defendant could withdraw his guilty plea if the court did not follow the *147 recommendation. The trial court assessed a penalty greater than recommended, but did not allow McGuire to withdraw his plea because the offense was not a felony. The court of criminal appeals held that the plea was a denial of due process "[s]ince the law pertaining to withdrawal of misdemeanor pleas differs from the assurance given by the prosecutor as an inducement for the agreement, and since the trial court did not follow the agreement, the appellant's waivers and plea were not made knowingly and voluntarily." McGuire, 617 S.W.2d at 261. The immediate situation is very similar. E.Q. received advice as to his right to withdraw his pleas which differed from the law as interpreted by the trial court. E.Q. relied on that information in entering into the plea agreement.
The defendant's reliance on representations of his counsel and the prosecutor may result in an involuntary guilty plea. See Huffman v. State, 676 S.W.2d 677 (Tex.App.Houston [1st Dist.] 1984, pet. refd). Huffman was a criminal defendant who agreed to testify against a codefendant. The prosecutor promised to recommend leniency in his case and Huffman's counsel and the prosecutor assured him that the trial court would follow the recommendation. To prevent a taint or diminution of Huffman's testimony against the co-defendant, no formal plea agreement was made or disclosed to the trial court.
At his trial, Huffman entered a guilty plea and the State requested a sentence of not more than thirty years. Instead, the trial court sentenced Huffman to ninety years. The court of appeals held that his guilty plea was not voluntary because he was not provided sufficient information to make a "knowing and intelligent waiver of his constitutional rights," and he relied on "misleading advice as to the state's ability to assure him of leniency from the court." Huffman, 676 S.W.2d at 682.
In the present case, we find that E.Q. relied on misinformation regarding his right to withdraw his pleas. Therefore his pleas were not made knowingly, voluntarily, and intelligently. We find that the first opportunity for the trial court to be fully aware of the relevant facts and to correct the acceptance of the invalid pleas was on E.Q.'s motion for new trial. Therefore, we sustain E.Q.'s third point of error.
E.Q. asserts in his second point of error that the trial court erred in refusing to allow him to withdraw his pleas of "true." Although we would sustain this point, we are not required to reach it. Since point of error three is dispositive, we do not reach points of error one, two, or four.

CONCLUSION
We reverse the order of adjudication and the order of determinate sentence commitment to the Texas Youth Commission of the trial court and remand the cause to the trial court with instructions that E.Q. be allowed to withdraw his pleas of "true" and that a new trial be granted.
NOTES
[1] This cause originated in the District Court of Bell County, 169th Judicial District, but was tried before the Honorable Edward S. Johnson, County Court at Law Number One of Bell County, sitting as the Juvenile Court of Bell County.