# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-03-00340-CV

---

**In the Matter of J. B.**

---

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
NO. D-02-0230-J, HONORABLE TOM GOSSETT, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Appellant J.B. was found to have engaged in delinquent conduct and was placed on probation for one year at the Roy K. Robb Post Adjudication Facility. About five months later, the State filed a petition to modify J.B.'s disposition, alleging he had violated his probation by being unsuccessfully discharged from the Robb Facility for rules violations, refusing to cooperate with the facility's staff, and threatening to assault a staff member. On April 4, the trial court signed an order committing J.B. to the Texas Youth Commission ("TYC") for an indeterminate period. J.B. appeals, arguing his due process rights were violated because the State failed to honor its "contract to provide medical treatment" to J.B. We affirm the trial court's judgment.

J.B. was born in December 1985. His mother told a psychiatrist that he began having behavioral problems when he was in the fifth grade. She sent him to Arizona to live with his father, who was abusive, and J.B. began abusing drugs and alcohol. In July 2002, about two months after

one of his younger brothers died of a drug overdose, J.B. got in a fight with his mother. J.B.'s mother tried to call 911, but J.B. pulled the phone from the wall, packed his clothes, and left the house. When the police responded, J.B. fought with the police officer, broke free, and ran away. J.B. was caught and taken into custody and placed in a police car, where he kicked out a window.

In July 2002, the State filed a petition alleging J.B. had engaged in delinquent conduct by assaulting a police officer, interfering with an emergency call, fleeing from arrest, and damaging property. In August 2002, J.B. underwent a psychological evaluation with Dr. Jarvis Wright, who stated that J.B.'s mother reported that J.B. had been diagnosed with bipolar disorder. Dr. Wright diagnosed major depressive disorder and alcohol and marijuana addiction and said that J.B.'s conduct suggested early signs of antisocial personality disorder. In November 2002, J.B. stipulated to the State's allegations and was placed on probation for a year in the custody of the Robb Facility. In January 2003, Valerie Robles, J.B.'s probation officer, developed a "child/family case plan" to address J.B.'s emotional and substance abuse issues. Among other things, J.B. was to attend individual and group counseling on a weekly basis and see a psychiatrist once a month to monitor and prescribe psychotropic medications. J.B. and his "caregiver" were made responsible for those actions. The case plan notes that J.B. was at the Robb Facility, "a secure facility" in which J.B. "can address his issues." On March 7, J.B. was involved in a confrontation with two staff members and had to be physically restrained. As a result, J.B. was discharged from the facility, and the State sought to have him committed to TYC. In March 2003, following a hearing, the trial court found that J.B. had violated the conditions of his probation by not cooperating with facility staff and by his unsuccessful discharge, and signed an order committing J.B. to TYC for an indefinite term. J.B.

2

contends on appeal that because the State failed to honor its "contract to provide medical treatment," he should not be committed to TYC.

At the hearing, Robles testified that J.B., who was currently taking psychotropic medication, saw a psychiatrist in September 2002 before going to the Robb Facility, but to her knowledge had not seen one since. Edward Jetton, the director of the Robb Facility in March 2003, testified that about a month after J.B. arrived at the facility, he began showing a "very clear and consistent progression of aggression" that began with aggressiveness towards his peers and escalated to defiance of and aggression toward staff members. Some of J.B.'s peers asked to be moved from rooms they shared with him because they feared for their safety. Jetton did not recall that J.B. saw a psychiatrist while at the facility; he thought J.B. was prescribed medication, but was not sure if it was psychotropic medication. Jetton said that a number of the juveniles at the facility took psychotropic medications and that prescriptions sometimes have to be changed in response to weight changes or other factors. Thomas Wingo, one of the juvenile correction officers involved in the March 7 confrontation, testified that he worked with J.B. for about two months and noticed that as time went on, J.B. became more easily angered and was hard to handle once angry. Wingo could not confirm that J.B. was manic depressive or bipolar. Wingo said the facility's staff is not aware of all the information in a juvenile's file; the administration discloses only the information it believes is necessary for the staff to help a child. Michael Torres, the other staff member involved in the March 7 incident, had never seen J.B.'s care plan and was not aware that J.B. was bipolar.

If a juvenile who has already been adjudicated delinquent for a felony violates a reasonable and lawful court order, Tex. Fam. Code Ann. § 54.05(f) (West Supp. 2004), a trial court

3

may remove a child from his home and commit him to TYC if it finds that such commitment would be in the child's best interest, reasonable efforts were made to prevent or eliminate the need for the removal, and the home does not provide the care, support, or supervision necessary for the child to meet his probation conditions. *Id*. § 54.04(i) (West Supp. 2004); *see In re C.C.*, 13 S.W.3d 854, 858 (Tex. App.—Austin 2000, no pet.); *In re M.S.*, 940 S.W.2d 789, 791 (Tex. App.—Austin 1997, no writ). If the trial court properly makes those required findings, it has broad discretion to determine the suitable disposition for the child. *C.C.*, 13 S.W.3d at 859; *In re J.R.*, 907 S.W.2d 107, 110 (Tex. App.—Austin 1995, no writ). We will not reverse a court's disposition decision absent an abuse of discretion. *C.C.*, 13 S.W.3d at 860; *see M.S.*, 940 S.W.2d at 791. A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *C.C.*, 13 S.W.3d at 859.

J.B. does not argue that the evidence is insufficient to support the trial court's findings regarding his commitment to TYC. He argues only that his due process rights were violated by the commitment because the State failed to follow through on the actions set out in the case plan.[1]

We agree with J.B. that juveniles are entitled to significant due process protections and should not be deprived of liberty without due process of law. *M.S.*, 940 S.W.2d at 790-91; *In re E.Q.*, 839 S.W.2d 144, 146 (Tex. App.—Austin 1992, no writ). Due process is not a clearly

---

[1] The State argues that J.B. waived this issue by not raising it before the trial court. Although J.B.'s argument before the trial court was less specific than it is on appeal, at the hearing before the trial court, counsel asked that J.B. be given another chance, pointing out that the case plan had not been followed and specifically noting that J.B. was supposed to see a psychiatrist every month. Counsel stated, "[T]he medicine that he's on is to help his behavior and if you can't have somebody that's an expert in that medication see him . . . they didn't live up to their end of the deal." We hold that the issue was not waived and will consider the merits of J.B.'s due process argument.

defined set of rights, *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 24-25 (1981), but rather is a "guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Under both federal and Texas constitutions, it means that an accused must be "accorded that fundamental fairness necessary to the due administration of justice." *Webb v. State*, 278 S.W.2d 158, 160 (Tex. Crim. App. 1955).

In a criminal case, a guilty plea under a plea agreement must be entered into voluntarily and intelligently. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Ex parte Morrow*, 952 S.W.2d 530, 534 (Tex. Crim. App. 1997); *Meyers v. State*, 623 S.W.2d 397, 401 (Tex. Crim. App. 1981). Due process protections extend to guilty pleas. *See Ex parte Lewis*, 587 S.W.2d 697, 700 (Tex. Crim. App. 1979). The court of criminal appeals has held that plea agreements are contractual in nature and are left to the parties to determine; once a trial court accepts a plea bargain, its terms are binding on both parties. *Boggess v. State*, 855 S.W.2d 656, 665 (Tex. Crim. App. 1989), *vacated on other grounds*, 492 U.S. 915 (1989). If a guilty plea so rests on a prosecutor's promise that the promise becomes part of the consideration for the plea, due process requires that the promise be fulfilled or that the defendant be allowed to withdraw the guilty plea. *Santobello v. New York*, 404 U.S. 257, 262 (1971); *Gibson v. State*, 803 S.W.2d 316, 318 (Tex. Crim. App. 1991). However, a party to a plea bargain "has no contractual rights to demand specific performance over terms not appearing in the agreement or record," and we "will not read into the terms of the plea agreement details not contemplated by the parties as reflected in the agreement or raised by the evidence." *Boggess*, 855 S.W.2d at 665.

5

J.B. relies on *Gibson* to support his argument. In *Gibson*, the defendant entered into a plea agreement under which he pleaded guilty to one charge in exchange for the dismissal of another; when the defendant sought the dismissal, however, the prosecutor argued that the plea agreement was void. *Gibson*, 803 S.W.2d at 317. The court of criminal appeals held that the guilty plea rested to a significant degree on the prosecutor's promise and, therefore, the promise was part of the consideration for the plea. *Id*. at 318. Because the defendant had already served "a substantial portion of his sentence under the guilty plea," allowing the plea to be withdrawn was not an appropriate remedy and due process required fulfillment of the prosecutor's promise that the charge would be dismissed. *Id*. We do not have such a situation before us. There is nothing to demonstrate that the case plan or the promise of such a plan was part of J.B.'s decision to stipulate to the State's allegations. J.B. was represented by counsel when he stipulated to the allegations on November 13, 2002. The case plan was not developed and signed until January 2003. The stipulation does not refer to the development of a case plan, nor do the other documents filed before the November 2002 adjudication hearing. J.B.'s conditions of probation state that he was to be confined to the Robb Facility for one year and during that year was required to cooperate with and obey the facility's staff members. J.B. was also informed that an unsuccessful discharge from the facility would be considered a breach of his probation terms. There is no mention of the case plan in the conditions of probation, the trial court's adjudication order, or the disposition order sending J.B. to the Robb Facility. *Gibson* therefore does not support J.B.'s argument.**²**

---

**²** *See also In re J.L.D.*, 74 S.W.3d 166, 170 n.4 (Tex. App.—Texarkana 2002, no pet.) (in juvenile case, due process requires that prosecutor's promise made as part of plea agreement must be kept); *In re E.Q.*, 839 S.W.2d 144, 146-47 (Tex. App.—Austin 1992, no writ) (juveniles are

J.B. has not shown that his stipulation was involuntary or that his due process rights were violated in the November 2002 adjudication and disposition proceedings. Nor has he shown that the trial court abused its discretion in making the required findings under section 54.04(i) of the family code and committing him to TYC. *See C.C.*, 13 S.W.3d at 859. We overrule J.B.'s issue on appeal and affirm the trial court's order of disposition.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   April 29, 2004

---

protected by some of the same procedures and rules used in criminal cases; juvenile's plea is not voluntary if based on misstatements by prosecutor).