**Opinion issued April 30, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00898-CV

———————————

## IN THE MATTER OF B.M.

———————————

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Case No. 18-CJV-021629**

———————————

## CONCURRING OPINION

In *Kent v. United States*, 383 U.S. 541 (1966), the Supreme Court determined that children[1] in juvenile proceedings should not be denied procedural rights given to adult criminal defendants merely because juvenile proceedings are characterized

---

[1] *See* TEX. FAM. CODE ANN. § 51.02(2) (defining child); *In re Hall*, 286 S.W.3d 925, 927 (Tex. 2009) ("Child is defined to include persons less than eighteen years old." (internal quotations omitted)).

as civil. *See Hidalgo v. State*, 983 S.W.2d 746, 750 (Tex. Crim. App. 1999) (citing *Kent*, 383 U.S. at 560). While identifying the determination to transfer a child from juvenile court to criminal court for prosecution as an adult "as 'critically important,'" the [Supreme] Court held [that] a state juvenile transfer process must operate in accordance with traditional notions of fundamental fairness." *Id.* (quoting *Kent*, 383 U.S. at 560). And that "[t]he process *must* include a hearing, effective assistance of counsel, and counsel's access to the child's social file." *Id.* (emphasis added).

Further, in *In re Gault*, 387 U.S. 1 (1967), the Supreme Court held that the Fourteenth Amendment's Due Process Clause applied to juvenile proceedings "entitling children to notice of charges, defense counsel, the privilege against self-incrimination, confrontation of and cross[-]examination of witnesses." *Hidalgo*, 983 S.W.2d at 750–51 (citing *In re Gault*, 387 U.S. at 49); *see also In re Gault*, 387 U.S. at 13 ("[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone.").

The Supreme Court has also determined that, as compared to adults, children under eighteen years of age lack of maturity, have "an underdeveloped sense of responsibility," and are "more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Roper v. Simmons*, 543 U.S. 551, 569 (2005) (internal quotations omitted). In the *Roper* majority opinion, Justice Kennedy further noted that "[t]hese qualities often result in impetuous and

ill-considered actions and decisions" by a child. *Id.* Moreover, the Court explained that children "have less control, or less experience with control, over their own environment" and their character "is not as well formed as that of an adult"; their personality traits are "more transitory, less fixed." *Id.* at 569–70. Based on these differences, the Court found suspect any conclusion that a child falls among the worst offenders because a child's "irresponsible conduct is [simply] not as morally reprehensible as that of an adult." *Id.* at 561, 570 (internal quotations omitted); *see also Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988) ("[T]he Court has already endorsed the proposition that less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult. . . . Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his . . . conduct while at the same time he . . . is much more apt to be motivated by mere emotion or peer pressure than as an adult.").

Texas courts have also recognized that children are different from adult criminal defendants and warrant additional protections. *See In re Hall*, 286 S.W.3d 925, 927 (Tex. 2009) ("The Legislature enacted the Juvenile Justice Code as a separate system for the prosecution, adjudication, sentencing, and detention of juvenile offenders to protect the public and provide for the wholesome moral, mental, and physical development of delinquent children. This separate system often provides enhanced procedural protections to juvenile offenders, who, because

of youth, ordinarily lack the mental and emotional maturity needed to . . . maintain an adequate defense." (internal citations omitted)); *Henderson v. State*, 962 S.W.2d 544, 562 (Tex. Crim. App. 1997) ("[The] State has a legitimate, and in fact compelling, interest in protecting the well-being of its children. . . . Children are deemed to warrant protection because of their inexperience, lack of social and intellectual development, moral innocence, and vulnerability."); *Lanes v. State*, 767 S.W.2d 789, 791–800 (Tex. Crim. App. 1989) (including historical discussion of juvenile justice policy and noting "rehabilitation and child protection remain as the pervasive and uniform themes of the Texas juvenile system"); *In re S.G.R.*, 496 S.W.3d 235, 238 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("Children ordinarily are not subject to criminal proceedings like adults."); *In re J.G.*, 905 S.W.2d 676, 680–81 (Tex. App.—Texarkana 1995), *writ denied*, 916 S.W.2d 949 (Tex. 1995) ("[A] juvenile is not similarly situated to an adult . . . . [T]he juvenile justice system is arranged with a special emphasis on the welfare of the child . . . ."); *In re E.Q.*, 839 S.W.2d 144, 145–46 (Tex. App.—Austin 1992, no writ) ("The [S]tate has an interest in providing for the care, protection, and development of its children . . . . The civil juvenile justice system was established in part to insulate minors from the harshness of criminal prosecutions, to promote rehabilitation over punishment, and to eliminate the taint of criminal conviction after incarceration by characterizing such actions as delinquent rather than criminal."); *see also* TEX. FAM.

4

CODE ANN. § 51.01 (purposes of Juvenile Justice Code include "provid[ing] treatment, training, and rehabilitation that emphasizes the accountability and responsibility of both the parent and the child for the child's conduct" and "provid[ing] for the care, the protection, and the wholesome moral, mental, and physical development of children coming within its provisions"). Thus, "[t]he transfer of a [child] from juvenile court to criminal court for prosecution as an adult should be regarded as the exception, not the rule; the operative principle is that, whenever feasible, children and adolescents below a certain age should be protected and rehabilitated rather than subjected to the harshness of the criminal system[.]" *Moon v. State*, 451 S.W.3d 28, 36 (Tex. Crim. App. 2014) (third alteration in original) (internal quotations omitted); *see also Lanes*, 767 S.W.2d at 796 ("The Texas juvenile system . . . seeks to avoid the taint of criminality in order to prevent recidivism and promote rehabilitation. The best method of avoiding attachment of a criminal taint is keeping the child completely out of the [criminal] system.").

Furthermore, because proceedings in juvenile court are quasi-criminal in nature, they are subject to numerous due process restrictions mirroring those at play in a full criminal trial. *In re A.J.S.*, 442 S.W.3d 562, 565 (Tex. App.—El Paso 2014, no pet.); *see also In re M.A.F.*, 966 S.W.2d 448, 450 (Tex. 1998); *Smith v. Rankin*, 661 S.W.2d 152, 153 (Tex. App.—Houston [1st Dist.] 1983, orig. proceeding). A child "is guaranteed the same constitutional rights as an adult in a criminal

5

proceeding because a juvenile-delinquency proceeding seeks to deprive [him] of his liberty." *State v. C.J.F.*, 183 S.W.3d 841, 847 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see also In re M.S.*, 940 S.W.2d 789, 790 (Tex. App.—Austin 1997, no writ) ("A juvenile proceeding, which may deprive a child of his liberty for a number of years, is comparable in seriousness to a criminal prosecution. . . . [F]or that reason, many of the due process protections applicable to criminal proceedings apply also to juvenile proceedings, such as the right to appeal and the right to assistance of counsel."); *see, e.g.*, TEX. FAM. CODE ANN. §§ 51.10, 56.01.

A transfer hearing, such as the one in this case, is not held for the purpose of determining a child's guilt or innocence; it is held for the purpose of establishing whether the child's and society's best interests are met by maintaining custody of the child in the juvenile system or by transferring the child to criminal court for trial as an adult. *See* TEX. FAM. CODE ANN. § 54.02 (transfer hearing); *State v. Lopez*, 196 S.W.3d 872, 874 (Tex. App.—Dallas 2006, pet. ref'd); *In re A.A.*, 929 S.W.2d 649, 653 (Tex. App.—San Antonio 1996, no writ). Notably, the law requires that a child in a Texas juvenile court has effective representation at a transfer hearing. *See* TEX. FAM. CODE ANN. § 51.10 (child entitled to representation by counsel at transfer hearing and may not waive right to counsel); *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984) ("That a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough to satisfy the constitutional

6

command. . . . [T]he right to the assistance of counsel . . . envisions counsel[] playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair."); *Hidalgo*, 983 S.W.2d at 750 (child entitled to effective assistance of counsel at transfer hearing). Inexplicably, in the instant case, the record reveals that B.M., a minor child, was not represented by a zealous advocate at his transfer hearing.[2]

At a transfer hearing, the juvenile court is the sole fact finder. *In re D.W.L.*, 828 S.W.2d 520, 525 (Tex. App.—Houston [14th Dist.] 1992, no writ). However, in his damaging opening statement at the transfer hearing, B.M's court-appointed counsel immediately told the juvenile court: "[W]e do not dispute any of the facts alleged by the State of Texas at this time, Judge, nor do I believe we ever will." Then, about his own client, B.M.'s counsel announced to the court: "[N]ow it's time to pay the piper."[3] This statement, which is often employed by the State in arguing

---

[2] The Texas Disciplinary Rules of Professional Conduct state that "[a]s [an] advocate, a lawyer [must] zealously assert[] [his] client's position under the rules of the adversary system." Tex. Disciplinary Rules Prof'l Conduct preamble ¶ 2, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A. And "a lawyer should act with competence, commitment and dedication to the interest of [his] client and with zeal in advocacy upon [his] client's behalf." Tex. Disciplinary Rules Prof'l Conduct R. 1.01 cmt. 6. Not surprisingly, "[l]oyalty is an essential element in [a] lawyer's relationship to [his] client." Tex. Disciplinary Rules Prof'l Conduct R. 1.06 cmt. 1.

[3] *Pay the piper*, MCGRAW-HILL'S DICTIONARY OF AMERICAN IDIOMS AND PHRASAL VERBS (2005) (defining "pay the piper" as "fac[ing] the results of one's actions; to receive *punishment* for something" (emphasis added)).

that an adult criminal defendant must be severely punished, alone is contrary to B.M.'s interest. *See, e.g.*, *Lopez v. State*, 318 S.W.3d 910, 913–14 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (trial court adjudicated adult criminal defendant guilty of felony offense of murder and two separate felony offenses of aggravated assault after State argued "it's time to pay the piper for what [defendant] did"); *Monroe v. State*, No. 01-99-00791-CR, 1999 WL 1208523, at *1 (Tex. App.—Houston [1st Dist.] Dec. 16, 1999, no pet.) (not designated for publication) (trial court used phrase "pay the piper" when revoking adult criminal defendant's community supervision and sentencing him to confinement for ten years); *Engle v. State*, No. 09-93-155 CR, 1993 WL 389202, at *1–2 (Tex. App.—Beaumont Sept. 29, 1993, pet. ref'd) (not designated for publication) (jury sentenced adult criminal defendant to confinement for ninety-nine years after State used phrase "now it's time to pay the piper" in closing argument); *Collins v. State*, No. B14-90-00614-CR, 1991 WL 119182, at *1, *4–5 (Tex. App.—Houston [14th Dist.] July 3, 1991, pet. ref'd) (not designated for publication) (during punishment phase of trial, after adult criminal defendant found guilty of two separate felony offenses of aggravated sexual assault of child, State argued that defendant "got to pay the [p]iper today").

Beyond that, during the entire transfer hearing, B.M.'s counsel only raised two objections to the evidence presented by the State against B.M. and barely cross-examined any of the State's witnesses. More specifically, over the course of

two days, the State elicited testimony from eleven witnesses, but B.M.'s counsel failed to ask eight of these witnesses—the majority of which were there to provide evidence to support the juvenile court's probable-cause findings—any questions at all. *See In re Gault*, 387 U.S. at 31–55 (child has due process rights of notice, counsel, confrontation, cross-examination, and privilege against self-incrimination). Of the remaining three witnesses, counsel asked a total of fourteen questions.[4] Most disturbingly, the *one* question that B.M.'s counsel posed to Fort Bend County Sheriff's Office Detective D. Williams, who provided significant evidence to support the juvenile court's probable-cause findings and who also gave the sole evidence of the confession of B.M.'s alleged accomplice, was whether he was "around [Dr.] Blasey Ford" "[t]hirty-six years ago."[5] Still yet, B.M.'s counsel expressly declined to cross-examine Sugar Land Police Department Officer J.

---

[4] These three witnesses, of which B.M.'s counsel *only* asked fourteen total questions, made up approximately seventy-four percent of the testimony elicited by the State on the second day of the transfer hearing.

[5] B.M.'s transfer hearing occurred soon after the Senate Judiciary Committee's hearing related to, then, United States Supreme Court nominee Judge Brett Kavanaugh. *See* Bloomberg Government, *Kavanaugh hearing: Transcript*, WASH. POST, (Sept. 27, 2018), https://www.washingtonpost.com/news/national/wp/2018/09/27/kavanaugh-hearing-transcript/?utm_term=.585a33bdbbef. Dr. Blasey Ford alleged that Justice Kavanaugh sexually assaulted her approximately thirty-six years ago when he was seventeen years old. Prior to his confirmation by the Senate, Dr. Blasey Ford testified against Justice Kavanaugh before the Senate Judiciary Committee. *See id.*

Hatfield, the only other law enforcement officer called to testify at the transfer hearing, because he was "not old enough to know [Dr.] Blasey Ford."[6]

Counsel eventually rested B.M.'s case without presenting any witnesses or evidence on behalf of his client. And then counsel again *conceded* in his closing argument to the juvenile court that the State had established probable cause for five of the seven aggravated robberies that the State alleged his client had committed. Surprisingly, counsel went further to tell the juvenile court that the State "did a great job" establishing probable cause.

Why does it matter that B.M.'s counsel's conceded probable cause and failed to substantively question any of the State's witnesses who were at the transfer hearing to provide probable-cause evidence against B.M.? Because in order for the juvenile court to waive its exclusive original jurisdiction and transfer B.M. to criminal court to stand trial as an adult, the juvenile court was required to find "that there [was] *probable cause* to believe that [B.M.] . . . committed the [aggravated robbery] offense[s] alleged" by the State. *See* TEX. FAM. CODE ANN. § 54.02(a) (emphasis added) (juvenile court also required to find "that because of the seriousness of the offense[s] alleged or the background of [B.M.] . . . the welfare of

---

[6] *See id.* Unfortunately, these were not the only comments B.M.'s counsel made about Dr. Blasey Ford during his client's "critically important" transfer hearing. *See Hidalgo v. State*, 983 S.W.2d 746, 750 (Tex. Crim. App. 1999) (internal quotations omitted).

10

the community require[d] criminal proceedings."). Significantly, it was *the State's burden* to establish probable cause, and yet, B.M.'s own counsel helped the State meet its burden in the instant case.[7] *See Moon*, 451 S.W.3d at 45 (State's burden); *In re Honsaker*, 539 S.W.2d 198, 201 (Tex. App.—Dallas 1976, writ ref'd n.r.e.) (State's burden to show probable cause exists to believe child committed offense alleged); *see also U.S. v. Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991) ("A lawyer who informs the [fact finder] that it is his view of the evidence that there is no reasonable doubt regarding the only factual issues that are in dispute has utterly failed to 'subject the prosecution's case to meaningful adversarial testing.'" (quoting *U.S. v. Cronic*, 466 U.S. 648, 659 (1984)); *Osborn v. Shillinger*, 861 F.2d 612, 625 (10th Cir. 1988) ("[A]n attorney who adopts and acts upon a belief that his client should be convicted 'fail[s] to function in any meaningful sense as the Government's adversary.'" (second alteration in original) (quoting *Cronic*, 466 U.S. at 666)).

> In Texas, we hold attorneys to the highest standards of ethical conduct in their dealings with their clients. The duty is highest when the

---

7   Considering that B.M.'s counsel conceded probable cause during the transfer hearing, it is also concerning that the *only* issue that B.M.'s court-appointed appellate counsel raised on appeal was whether the evidence was legally sufficient to support the trial court's findings of probable cause that B.M. committed seven separate felony offenses of aggravated robbery, as alleged by the State. *See* TEX. R. APP. P. 47.1 (appellate court may only address issues raised by party and necessary to final disposition); *Armstrong v. State*, 805 S.W.2d 791, 794 (Tex. Crim. App. 1991) (no power to issue advisory opinion on issues not advanced by party on appeal); *see also Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985); *Ward v. State*, 740 S.W.2d 794, 800 (Tex. Crim. App. 1987) (recognizing right of effective assistance of counsel on appeal).

> attorney . . . takes a position adverse to his . . . client's interest[]. As Justice Cardozo observed, "[a fiduciary] is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."[8] Accordingly, a lawyer must conduct his . . . business with inveterate honesty and loyalty, always keeping [his] client's best interest in mind.

*Hoover v. Slovacek LLP v. Walton*, 206 S.W.3d 557, 560–61 (Tex. 2006) (fourth alteration in original). B.M.'s counsel's approach of agreeing with the State's case, sitting almost completely silent while eleven witnesses, over two days, testified against his client, and making insensitive, irrelevant, and inappropriate "jokes" and comments during a "critically important" proceeding involving a child, is not indicative of a "commitment and dedication to the interest of [his] client" and zealous "advocacy upon [his] client's behalf" that is expected by the lawyers in this State. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.01 cmt. 6, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A; *see also Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 867 (Tex. 2000) (Gonzales, J., concurring and dissenting) ("Fundamentally, a lawyer should always act in [his] client's best interest[].").

---

8     *See Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928).

12

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Countiss, J., concurring.