

NUMBER 13-09-00218-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

BENITO LOPEZ,                                                                          Appellant,

v.

THE STATE OF TEXAS,
Appellee.

On appeal from the 117th District Court
of Nueces County, Texas.

# O P I N I O N

### Before Justices Rodriguez, Benavides, and Vela
### Opinion by Justice Benavides

Appellant, Benito Lopez, appeals from the trial court's revocation of his deferred adjudication community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 §§ 5(b), 23 (Vernon Supp. 2009). By two issues, Lopez argues that the State improperly amended the motion to revoke his community supervision two days before the revocation hearing, in violation of article 42.12 section 21(b) of the Texas Code of

Criminal Procedure, *see id.* art. 42.12 § 21(b), and that he received ineffective assistance of counsel during the revocation hearing.   We affirm.

## I.  BACKGROUND

On February 17, 2005, Lopez was indicted on one count of murder and two counts of aggravated assault.   *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2003), § 22.02 (Vernon Supp. 2009).   Pursuant to a plea bargain, Lopez pleaded guilty, and on December 13, 2005, the trial court deferred adjudication and placed Lopez on five years of community supervision.   *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 5(a).

On August 1, 2006, the State filed a motion to revoke Lopez's community supervision, alleging seven violations.   Lopez pleaded "true" to six of the alleged violations, including (1) testing positive for marijuana; (2) failing to report to his supervision officer; (3) failing to pay court costs; (4) failing to pay a photo identification fee; (5) failing to pay a monthly supervision fee; and (6) failing to observe a curfew. Lopez denied the seventh allegation, which was that he failed to complete his community service.   The trial court found that Lopez violated the terms of his community supervision but did not proceed to adjudicate guilt.   Instead, the trial court continued Lopez on community supervision and imposed sanctions, including requirements that Lopez (1) attend the Coastal Bend Outpatient Program for anger management; (2) abide by a curfew for an additional six months; and (3) serve sixty days in the Nueces County Jail (known as the S.P.U.R.S. program).

On January 24, 2008, the State filed a second motion to revoke Lopez's community supervision.   The State alleged eight violations of Lopez's supervision.

2

Lopez pleaded "true" to five of the allegations: (1) failing to report to his supervision officer; (2) failing to pay court costs; (3) failing to complete the Coastal Bend Outpatient program; (4) failing to complete community service; and (5) failing to complete the S.P.U.R.S. program. Lopez denied that he had failed to attend anger management classes and failed to comply with two conditions of his supervision relating to MHMR counseling. No express ruling appears in the record on the State's second motion to revoke; however, the trial court's docket sheet indicates that on February 19, 2008, the trial court continued Lopez on community supervision and sanctioned him by extending the term of supervision for a year, with the further conditions that Lopez participate in the MHMR program previously ordered by the court.

The State then sought, for the third time, to revoke Lopez's community supervision. The record shows that on March 2, 2009, the State filed what it called an "Amended Second Original Motion to Revoke." The motion that this "amended" motion supposedly sought to amend was not included in the record. In the amended motion, the State alleged that Lopez violated his community supervision by (1) burglarizing a habitation; (2) burglarizing six different vehicles; (3) testing positive for marijuana on two separate occasions; (4) failing to pay court costs, photo identification fees, and monthly supervision fees; (5) failing to attend the Coastal Bend Outpatient Program; and (6) failing to complete community service.

The trial court held a hearing on this motion two days later on March 4, 2009. At the hearing, Lopez's counsel announced ready. The trial court looked through its file, attempting to locate the motion to revoke, but could not locate it. Finally, the court

3

located the amended motion and asked Lopez if he had received a copy of the "second amended motion that was filed on March the 2nd of 2009," and Lopez answered, "Yes, sir." The trial court then asked if Lopez had an opportunity to discuss the motion with his attorney, and Lopez said he had. Lopez then waived the reading of the motion. Lopez's counsel did not object that the amended motion had been filed only two days before the hearing or that the original motion was missing from the record.

The State abandoned its allegation that Lopez burglarized a habitation, and Lopez then pleaded "true" to all of the allegations in the State's motion. The State asked the trial court to take judicial notice of Lopez's guilty plea and Lopez's testimony during the trial of his co-defendant. The State then made the following argument:

> I think, and I'm asking the Court that enough is enough on Mr. Lopez that his chance, the excuse of being young and stupid was when he was given probation when he testified. Thank you for testifying. Now, go be a good citizen; however, he pretty much ignored that opportunity, continued to violate the law, have additional victims, and what I'm asking the Court to do is to give closure to the family of Inocension Lerma, the mom and dad who are sitting here and his family and to close the chapter on the death of their son.
>
> There's always been a matter of time of holding Mr. Lopez accountable and today is judgment day for Benito Lopez and for his role in it and it's time to pay the piper for what he did.
>
> It is my request of the Court on behalf of the family that Mr. Lopez have his deferred adjudication revoked and that he be sentenced to the Institution[al] Division of the Texas Department of Criminal Justice for a period of between 5 and 99 years or life that the Court believes is just for the opportunities Mr. Lopez has received, for participation in this crime and for his continually ignoring the laws of the State of Texas, continually disregarding the citizens, doing what he wants to do.

4

I think Mr. Lopez has shown that as long as he's at large, our citizens are in danger. I ask the Court to assess a heavy and severe sentence that the Court believes is appropriate.

Defense counsel called Lopez's sister, Melinda Nava, to testify on his behalf. Nava claimed that Lopez was bipolar and taking medication. She claimed that he does not have a car and that she tried to help him attend all the required meetings for his community supervision until she had a liver transplant a year earlier. She claimed that Lopez could not pay the costs and other fees ordered by the trial court because he was depressed and could not get a job because of his criminal record.

5

The State then called Gloria Lerma, the mother of the murder victim, to testify regarding punishment.  At the end of the testimony, the following exchange occurred regarding sentencing:

[Defense Counsel]: I would ask the Court instead of sending him to prison, to—if the Court is going to adjudicate[,] to adjudicate him and send him to the county jail for a significant period of time, such as 180 days and put him on an intensive supervision program.  Part of that program be that he gets special needs help to help him with his bipolar and his depression and also help through a restitution setting.

I know in Sinton they have a restitution center there. I'm not sure if we have that here, but to have him go to a restitution center so hopefully they can get him lined up with a job so he can start making his Court cost[s] and his payments and finish his community

6

service hours and hope that he can try to do as much as he can possibly humanly do to pay the restitution in this case, to help for what he's done in this case.

Obviously, he can't bring back the victim. There's nothing he can do that [sic]. He did testify in the case. I think—I think he did as much as he could do on that point. There is like what he said, there is no justification for breaking into people's cars, the fact that you're poor is not an excuse. I understand that, and the fact that you have mental problems is not an excuse either.

I do believe he's a young man. I do believe that the—the Court was to sanction him, adjudicate him, leave him on prohibition [sic], put him in the county jail for a significant period of time and then if released put him on an ISP program, electronic monitoring, make sure that he gets help, special needs in some form of restitution center so that he can learn a trade even

7

|  |  |
|---|---|
|  | with the—the conviction on his record that he can go on with his life. That's the extent of our argument. |
| [The State]: | In closing, Your Honor, murder is a 3G offense. You cannot adjudicate murder and put someone on probation. It has to be—it has to be TDC, number one. . . . . The state's position that since he's continued to commit crimes, apparently, showing no remorse by causing the victims that the punishment should fit the crime[,] and the crime is murder. |
| [Defense Counsel]: | Interestingly, correct on that. I do remember the change being on the murder if there is no probation. That being the case, I would ask the Court to take into consideration what we have heard from— |
| [The State]: | I don't think there is an opportunity to—I think the state is entitled to the closing argument. |

8

[Defense Counsel]: That's fine.  I just ask that the Court consider what the sister has told us considering the length of time the Court is going to sentence.

The trial court adjudicated Lopez guilty of murder and two counts of aggravated assault and sentenced him to twenty years' imprisonment in the Texas Department of Criminal Justice—Institutional Division.  Lopez did not file a motion for new trial.  This appeal ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

By his first issue, Lopez argues that his counsel was ineffective because, after the State argued for a heavy sentence, his counsel asked the trial court to adjudicate him guilty and then probate the sentence, which is prohibited in murder cases.  *See id.*

9

art. 42.12 § 3(g). Lopez argues that his "attorney did not have a knowledgeable grasp of the law and facts surrounding the circumstances of the charges," and there can be "no valid trial strategy for being wrong." He argues that he had "one chance at the hearing to establish a feasible recommendation to the court as an alternative to the state's pronouncement of a severe prison sentence[,] and his attorney made a critical error that did not serve [his] best interest." We disagree.

We apply the two-pronged *Strickland* analysis to determine whether counsel's representation was so deficient that it violated a defendant's constitutional right to effective assistance of counsel. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006,

10

no pet.); *see Strickland v. Washington*, 466 U.S. 668, 684 (1984). An appellant claiming a *Strickland* violation must establish that (1) "his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different." *Jaynes*, 216 S.W.3d at 851; *see Strickland*, 466 U.S. at 687.

We afford great deference to trial counsel's ability—"an appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Jaynes*, 216 S.W.3d at 851. The appellant must prove both elements of the *Strickland* test by a preponderance of the evidence. *Munoz v. State*, 24 S.W.3d 427, 434 (Tex. App.–Corpus Christi 2000, no pet.).

First, we disagree with Lopez's characterization of the revocation hearing. Although his attorney requested the trial court proceed with adjudication and then probate the sentence, his arguments are also consistent with a request that the trial court not adjudicate Lopez but instead sanction him and continue the deferred adjudication community supervision, which was in the trial court's power. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 22. Additionally, contrary to Lopez's argument, his trial counsel did ask for a reduced sentence in light of Lopez's sister's testimony, which offered explanations for some of the community supervision violations.

Second, and more importantly, Lopez has not presented any evidence that, absent his attorney's erroneous legal argument, the result would have been different.

12

*See Ex parte Battle*, 817 S.W.2d 81, 84 (Tex. Crim. App. 1991) (holding that the defendant proved prejudice from attorney's faulty advise regarding availability of probation where defendant would not have pleaded guilty but for faulty advice); *State v. Recer*, 815 S.W.2d 730, 731-32 (Tex. Crim. App. 1991). Lopez does not argue that he would not have pleaded "true" to the allegations in the State's motion to revoke if he had known that he could not be adjudicated and have the sentence probated. Furthermore, Lopez does not provide this Court with an alternative to the sentence he received that the trial court would have, more probably than not, adopted.

The simple fact is that Lopez admitted numerous violations of his community supervision, and the trial court, on two prior occasions, had refused to adjudicate

Lopez's underlying crimes and had continued his community supervision. Lopez used up his last chance by violating the terms of his community supervision yet again. There is nothing to suggest that, had his counsel made some other argument, he would have received yet another chance or a reduced sentence. We overrule his first issue.

### III. AMENDED MOTION TO REVOKE COMMUNITY SUPERVISION

By his second issue, Lopez argues that the State amended its motion to revoke two days before the hearing without a showing of good cause, in violation of article 42.12, section 21(b) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 21(b). That section provides, in relevant part:

> In a felony case, the state may amend the motion to revoke community supervision any time up to seven days before the date of the revocation

14

hearing, after which time the motion may not be amended except for good cause shown, and in no event may the state amend the motion after the commencement of taking evidence at the hearing. The judge may continue the hearing for good cause shown by either the defendant or the state.

*Id.*

The State concedes that the amendment was untimely but argues that Lopez waived this issue by failing to object in the trial court. Lopez argues that his right to avoid proceeding on an untimely amended motion to revoke is a "waivable only" right and that because he did not expressly waive the error, we can review it. In the

15

alternative, Lopez argues that by failing to object, his counsel was ineffective. We

agree with the State that Lopez cannot prevail on his issue, but for a different reason.[1]

---

[1] There are three distinct types of rights that require the application of differing rules of procedural default: "(1) absolute requirements and prohibitions; (2) rights of litigants that must be implemented by the system unless expressly waived; and (3) rights of litigants that are to be implemented upon request." *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). Absolute rights must be implemented regardless of whether they are requested and even if both parties object. *Id.* "Waivable" rights are those that are not forfeited by inaction alone, but must be expressly waived. *Id.* "All other complaints, whether constitutional, statutory, or otherwise, are subject to forfeiture, and fall into the third category." *Id.* This framework of procedural default was set forth by the Texas Court of Criminal Appeals in a 1993 in *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997).

 Prior to *Marin*, this Court held that the failure to object to an untimely amendment to a motion to revoke waives the error. *See Burns v. State*, 835 S.W.2d 733, 735 (Tex. App.–Corpus Christi 1992, pet. ref'd). We have not determined where article 42.12, section 21(a) fits within *Marin*'s framework, although we have followed *Burns* in an unpublished decision since *Marin* was decided. *See Giordano v. State,* No. 13-96-285-CR, 1998 WL 34201885, at *1 (Tex. App.–Corpus Christi Apr. 23, 1998, no pet.) (not

As the Texas Court of Criminal Appeals has explained, community supervision is a contractual privilege, not a systemic right, and Lopez does not argue otherwise. *See Speth v. State,* 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). In this case, Lopez complains of a statutory violation, which is subject to rule 44.2(b)'s harm analysis. TEX. R. APP. P. 44.2(b); *see Aguirre-Mata v. State*, 992 S.W.2d 495, 499 (Tex. Crim. App. 1999); *see, e.g., Curry v. State,* 966 S.W.2d 203, 206 (Tex. App.–El Paso 1998), *vacated in part on other grounds by* 975 S.W.2d 629 (Tex. Crim. App. 1998) (applying

designated for publication). Our sister courts of appeal have also followed *Burns* without analyzing *Marin*'s impact. *See, e.g., Lewis v. State*, 195 S.W.3d 205, 208 (Tex. App.–San Antonio 2006, no pet.). We need not decide the issue now because, even if the right Lopez asserts now was "waivable only," he still was required to show harm from the error. *See* TEX. R. APP. P. 44.2(b).

17

rule 44.2(b) to error in allowing untimely amendment of indictment).  Under rule 44.2(b), we may not reverse a conviction based on error that does not affect the defendant's substantial rights.  TEX. R. APP. P. 44.2(b).  Lopez has not made such a showing here.

When Lopez appeared at the hearing, the trial court asked whether he had reviewed the amended motion with his attorney, and Lopez affirmatively represented that he had.  Lopez then waived the reading of the motion and pleaded "true" to every allegation in the amended motion.  There is nothing in the record showing that a continuance of five more days to allow compliance with the statute would have resulted

18

in a different plea to any of the alleged violations of community supervision. *See id.*; *see also Brown v. State*, No. 04-04-00465-CR, 2005 WL 1276401, at \*1 (Tex. App.–San Antonio June 1, 2005, no pet.) (mem. op., not designated for publication) (holding that defendant failed to show harm from violation of article 42.12 section 21(b) by pleading "true" to at least one of the allegations in the original motion).

For the same basic reason, Lopez could not prevail on a claim of ineffective assistance of counsel. Even assuming that his attorney was ineffective in failing to object to the untimely amendment, Lopez does not point to anything in the record demonstrating that, but for his attorney's errors, the result of the proceeding would have

19

been different.  *Jaynes*, 216 S.W.3d at 851; *see Strickland*, 466  U.S. at 687. Accordingly, we overrule Lopez's second issue.

## IV.  CONCLUSION

Having overruled both of Lopez's issues, we affirm the trial court's judgment.

 

_____
GINA M. BENAVIDES,
Justice

Publish.
*See* TEX. R. APP. P. 47.2(b).

20

Delivered and filed the
15th day of July, 2010.