In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00086-CR
_____

LAWRENCE RAY DIRDEN II, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-01-00324-CR**

## MEMORANDUM OPINION

In four issues, Lawrence Ray Dirden II ("Lawrence" or "Appellant") challenges the trial court's revocation of his community supervision. We affirm. Lawrence was indicted for Aggregate Theft in an amount in excess of $200,000, a first degree felony.[1] *See* Tex. Penal Code Ann. §§ 31.03, 31.09 (West 2011 and Supp. 2016). In the amended indictment, the State alleged that Lawrence

---

[1] Lawrence's wife, Denise Dirden (Denise), was also charged with Aggregate Theft in an amount in excess of $200,000, and the cases were tried

1

. . . unlawfully appropriate[d] property, by acquiring or otherwise exercising control over the property, to wit: money, in the aggregate value of $200,000 or more, from Isaac Martin III, and/or Martin Wood Company, Inc. and/or Stoneham Mill, Inc., the owner, from account number(s) 1003706 and 1047786 at First Bank of Conroe, N.A., with the intent to deprive the owner of the property, and said property was obtained pursuant to one scheme or continuing course of conduct which began on January 28, 2008[,] and continued until on or about December 16, 2008.

On April 28, 2014, the jury returned a guilty verdict against Lawrence as charged in the indictment. Before the sentencing and entry of a judgment, the State and Lawrence reached an agreement wherein Lawrence agreed to "10 years probated over 10 years, [and] $350,000 to be paid within 180 days of [September 17, 2014,] and $125,000 to be paid over the next 10 years." On September 17, 2014, pursuant to the agreement between the State and Dirden, the trial court sentenced Lawrence to ten years' confinement in the TDCJ, to be probated, with a list of conditions of probation and with a requirement as agreed between the parties that Lawrence pay restitution of $350,000 within 180 days of the date of the hearing, and $125,000 to be paid over the next ten years.

Two of the conditions of probation included that Lawrence would:

together. A jury found Lawrence and Denise guilty. We previously issued our Memorandum Opinion affirming Denise's conviction, wherein we outlined the underlying facts and testimony presented at trial. *See generally Dirden v. State*, No. 09-14-00330-CR, 2016 Tex. App. LEXIS 9213 (Tex. App.—Beaumont Aug. 24, 2016, no pet.).

c. Not use or consume alcohol or controlled substances; [and]

. . . .

q. Pay $390.00 Court costs; $350,000.00 TO BE PAID WITHIN 180 DAYS $125,000.00 TO BE PAID OVER 10 YEAR PERIOD ALL TO BE PAID INSTANTER restitution for the benefit of STONEHAM MILL, INC. P.O. BOX #1828 CLEVELAND, Tx 77328; $0 Court appointed attorney fees; and $0.00 fine, all in one lump sum payment to the Montgomery County District Clerk on the day this Judgment is entered <OR> pay in installments, the total sum of the foregoing to the Montgomery County District Clerk, including $2.00 fee for each payment made (pursuant to Article 102.072, T.C.C.P.), as set forth in the Collection Agreement which is incorporated herein and made part of this judgment as if copied verbatim[.]

On July 22, 2015, the State filed a Motion to Revoke Community Supervision alleging Lawrence had violated the terms and conditions of his community supervision, as follows:

I.

Defendant failed to pay $350,000.00 restitution within 180 days from the date Judgment was signed.

The State requested an order of arrest and that the trial court revoke the community supervision and pronounce sentence. After his arrest, Lawrence filed a Motion of Incarcerated Defendant for Prompt Revocation Hearing, wherein he alleged that he was granted community supervision in his Judgment dated September 17, 2014, and then later arrested on November 9, 2015, for an act alleged to be a violation of

the terms of his community supervision. On December 2, 2015, the trial court released Lawrence on a Personal Recognizance Bond (PR Bond). After being notified that the "Defendant tested positive for alcohol in random urinalysis conducted on January 19, 2016[,]" the trial court then revoked the PR Bond and issued a capias for Lawrence.

The State filed an Amended Motion to Revoke Community Supervision (Amended Motion) dated February 18, 2016, and file stamped by the clerk on February 19, 2016. In the Amended Motion, the State alleged that on September 17, 2014, Lawrence was convicted and placed on community supervision for a period of ten years on terms and conditions as set forth in the Judgment and that he subsequently violated the terms and conditions for his community supervision as follows:

I.
Defendant tested Positive for alcohol in random urinalysis conducted on January 19, 2016.

II.
Defendant failed to pay $350,000.00 in restitution within 180 days from the date of the judgment as ordered by the Court.

On February 22, 2016, the parties agreed to set the revocation hearing for February 25, 2016. On February 25, 2016, the trial court held a revocation hearing, and the State and Lawrence appeared with their respective attorneys. Lawrence and

his trial counsel executed a sworn "Stipulation of Evidence" (Stipulation), which was filed into the clerk's record at 4:30 p.m. on the date of the hearing. The Stipulation, which was signed by Lawrence, his attorney, and the trial court judge, reads in relevant part as follows:

> . . . I have read the State's Original Motion to Revoke Community Supervision filed with the District Clerk on or about February 18, 2016 and I hereby agree and confess that all the acts and allegations in Paragraphs I, II thereof are true and correct, and all of said conduct constituted violations of the conditions of my community supervision and occurred during the period in which the conditions of my community supervision were mandatory.

According to the Reporter's Record, the following exchange occurred at the beginning of the revocation hearing:

> THE COURT: . . . Okay. I have the State's amended motion to revoke community supervision dated February 19th, 2016. So is there anything more recent than that, Ms. [State's Attorney]?
>
> [State's Attorney]: No, Your Honor.
>
> THE COURT: Okay. Has the defense been given a copy of that?
>
> [State's Attorney]: You have a copy of it, right?
>
> [Defense Attorney]: We received a copy of it yesterday, yes, sir, Your Honor.
>
> THE COURT: Okay. You received a copy yesterday? So are you -- you're saying the State didn't give you a copy earlier or why didn't you have it 10 days?
>
> [Defense Attorney]: No, sir. We just got it yesterday.

5

THE COURT: Okay.

[Defense Attorney]: We're ready and prepared though, Your Honor.

THE COURT: Okay. Well, you're ready to go. State ready?

[State's Attorney]: Yes, Your Honor.

THE COURT: All right. Call your first witness.

Both attorneys then proceeded to present an opening statement to the trial court, and the State called its first witness, Anthony Gaskill (Gaskill), a drug test administrator. Gaskill testified that he works for Davis Investigation Services, the company that holds a contract with Montgomery County Probation to administer drug testing and that tests everyone who is on bond or probation. During the questioning of Gaskill, the following exchange occurred:

[State's Attorney]: Okay. Do you have any special training to conduct these tests?

[Gaskill]: Just on-si[te] training.

[State's Attorney]: Now, were you asked to conduct a urinalysis specimen or urinalysis test on Lawrence Dirden?

[Gaskill]: Yes, sir.

[State's Attorney]: And do you recall when you were requested to perform that specimen?
[Defense Attorney]: May it please the Court? We're going to object to this testimony whatsoever because this is a new allegation that was joined on February the 19th, an allegation that allegedly occurred on January the 19th. It was filed within 7 days before the date of the

6

hearing; and therefore, it should not be allowed under section 42.12, subparagraph 21.

[State's Attorney]: May I respond, Your Honor?

THE COURT: Sure.

[State's Attorney]: Before the hearing, he brought up the issue that he had not had 10 day's [sic] notice. He said he was willing and ready to go forward.

THE COURT: I agree. Objection is overruled.

[Defense Attorney]: Note our exception, Your Honor?

THE COURT: Noted.

Gaskill testified that Lawrence appeared on the date requested for a urinalysis and that, after Lawrence provided a sample, Gaskill labelled it and sent the sample to Redwood Laboratory in California for testing. The defense made a hearsay objection to the testimony, and argued that Gaskill was testifying from a document not admitted into evidence. The court overruled the objections. Gaskill testified that alcohol testing was performed on the sample Lawrence provided.

John Martin (Martin), a toxicologist with the Redwood Laboratory in California, testified by telephone. Lawrence objected to Mr. Martin's telephonic testimony stating that Lawrence was entitled to prior notice of the State's intent to admit telephonic testimony. The Court overruled Lawrence's objection. Martin

7

testified as to the validity of the laboratory test results on Lawrence's urine sample and that Lawrence's test result demonstrated Lawrence had consumed alcohol.

Lisa Foster (Foster) testified that she is a community supervision officer and that she did a presentence investigation in 2014 before Lawrence was sentenced. Foster explained that she met with Lawrence concerning restitution when she prepared the presentence investigation and also in January of 2016. According to Foster, when she was preparing her presentence investigation, Lawrence "said he would do anything necessary to make it right with the victims of the offense. He said he would sell his assets and do whatever he needed to do to make it right." Foster explained that, at that time, Lawrence owned property, a house, a logging company, and a water business. Foster also testified that, in January of 2016, Lawrence said he was willing to sign over his interest in his house, but that "his wife would have to sign off on selling her half; and she's not willing to do that." Foster further testified that she sent him for alcohol testing when she met with him on January 19, 2016, but that she did not then have reason to believe he was drinking and she was "shocked" that the test results were positive for alcohol. Foster also agreed that Lawrence had made monthly restitution payments.

Isaac Martin (Ike) testified that Lawrence and Denise took Ike's money and used it to build a house, which Ike understood was appraised at about $800,000

8

and that there was a $25,000 lien against the house. According to Ike, Lawrence also owned several parcels of land, totaling about eighty acres. Ike testified that he understood that Lawrence was going to sign over his interest in the property, and that Ike had consulted with an attorney regarding Lawrence signing over his interest, but that Lawrence had failed to sign over his interest and Ike did not believe Lawrence was willing to do so. According to Ike, Lawrence's land is listed for sale but Ike believed that the land was overpriced.

Robert Clark (Clark), CEO of the Bank of San Jacinto County (the Bank), testified that Lawrence had been a client of the Bank for a long time and Lawrence had obtained numerous loans over the years. According to Clark, after September of 2014, Lawrence attempted to obtain a loan in the amount of $350,000 from the Bank and the Bank denied the loan. Clark explained that Lawrence owned three tracts of land that are mortgaged through the Bank, that Lawrence owed about $130,000 on the land at the time of the hearing, and that Lawrence owed about $230,000 total debt to the Bank. Clark testified that the approximate value of the three tracts of land was "in [the] range[]" of $800,000. Clark also testified that some of Lawrence's loans were collateralized with equipment or vehicles.

Lawrence did not testify and he offered no witnesses. At the close of the hearing, the trial court found the allegations in the motion to revoke "[t]rue[]" on

9

both "paragraphs one and two." The trial court announced a sentence of ten years in the TDCJ and ordered that the fine, restitution, and court costs would carry over from the original case.

On appeal, Appellant raises four issues challenging the trial court's revocation of his community supervision. First, Appellant argues that the State filed an untimely motion to revoke community supervision which was "an error, defect, irregularity, or variance that affected appellant's substantial rights." Second, Appellant argues that the trial court abused its discretion in finding the State's paragraph one in the Motion to Revoke Community Supervision "true" because the State's only evidence for its allegation that Appellant tested positive for alcohol in random urinalysis was inadmissible. Appellant argues that the trial court erred in allowing the toxicologist to testify telephonically and contends that the lab report was not properly authenticated and was admitted erroneously. Consequently, Appellant contends that there was insufficient evidence to support a finding that Appellant violated the terms of his community supervision by ingesting alcohol. Third, Appellant argues that the State failed to prove by a preponderance of the evidence that Appellant violated the terms of his community supervision because the State failed to establish that Appellant was "able to pay

10

and did not pay as ordered by the judge when the defendant refused to sell the homestead[]" and that "the State cannot infer from appellant's refusal to abandon his homestead property that he intentionally failed to pay." And, fourth, Appellant contends that the "revocation of defendant's community supervision due to defendant's inability to pay the restitution violated the equal protection clause under the Fourteenth Amendment."

ANALYSIS

Standard of Review

When reviewing an order revoking community supervision, the sole question before this Court is whether the trial court abused its discretion. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated a condition of community supervision as alleged in the motion to revoke. *Rickels*, 202 S.W.3d at 763-64; *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). In the context of a revocation proceeding, "a preponderance of the evidence" means "'that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his [community supervision]." *Rickels*, 202 S.W.3d at 764.

11

In determining the sufficiency of the evidence to sustain a revocation, we view the evidence in the light most favorable to the trial court's ruling. *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979). The trial court abuses its discretion only if its decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). Revocation is appropriate when a preponderance of the evidence supports at least one of the State's allegations that the defendant violated a condition of his community supervision. *See Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012). A single violation of a term of community supervision is sufficient to support the trial court's decision to revoke community supervision. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Bessard v. State*, 464 S.W.3d 427, 429 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013).

<u>Amended Motion to Revoke</u>

Article 42.12, section 21(b-2) of the Texas Code of Criminal Procedure imposes an obligation on the State to file and serve notice of an amended motion to revoke at least seven days before the revocation hearing.[2] Tex. Code Crim. Proc. Ann. art. 42.12, § 21(b-2) (West Supp. 2016). An untimely motion to amend a motion to revoke community supervision is a statutory violation and thus subject to a harm analysis, under which any "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b); *Lopez v. State*, 318 S.W.3d 910, 916-17 (Tex. App.—Corpus Christi 2010, no pet.) (untimely motion to amend motion to revoke community supervision is statutory violation, thus subject to Rule 44.2(b) harm analysis); *see also Aguirre-Mata v. State*, 992 S.W.2d 495, 499 (Tex. Crim. App. 1999). When evaluating whether a defendant was harmed under Rule 44.2(b), we look to the record as a whole to determine whether the defendant's "substantial rights" were affected. *Davison v. State*, 405 S.W.3d 682, 688 (Tex. Crim. App. 2013).

---

[2] "In a felony case, the state may amend the motion to revoke community supervision any time up to seven days before the date of the revocation hearing, after which time the motion may not be amended except for good cause shown, and in no event may the state amend the motion after the commencement of taking evidence at the hearing. The judge may continue the hearing for good cause shown by either the defendant or the state." Tex. Code Crim. Proc. Ann. art. 42.12, § 21(b-2) (West Supp. 2016).

At the beginning of the revocation hearing, the trial court inquired whether the defense had received the amended motion to revoke, and the defense acknowledged it was "ready to go." The Appellant did not lodge an objection to the timeliness of the amendment at that time. Appellant argues that his objection that he made during Gaskill's testimony preserved his complaint that the Amended Motion was untimely. We disagree.

Appellant indicated at the beginning of the proceeding that he was willing to proceed with the revocation hearing as to the allegations made within the Amended Motion. Appellant never sought a continuance nor did he ask for additional time to prepare for the hearing, Appellant did not argue that he was surprised by the allegations in the Amended Motion, and he did not argue that he would be harmed by proceeding with the hearing on the Amended Motion. By failing to timely object to the State's amendment and by agreeing to proceed with a hearing on the Amended Motion, the Appellant waived his complaint on appeal that the State's amendment was untimely. *See* Tex. R. App. P. 33.1(a); *Burns v. State*, 835 S.W.2d 733, 735 (Tex. App.—Corpus Christi 1992, pet. ref'd) (failure to object at the commencement of a revocation hearing to the State's amended motion to revoke waived error for appeal).

14

A party must make his objection at the earliest possible opportunity, and the point of error on appeal must comport with the objection made at trial. *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) (citing *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002)). In this case, Appellant's counsel not only did not object to having received the Amended Motion the day before the hearing, but expressly stated on the record "[w]e're ready and prepared[.]" Failure to lodge a timely objection and the Appellant's express agreement to proceed with the hearing constitutes a waiver of any issue regarding the timeliness of the State's amended motion. *See Burns*, 835 S.W.2d at 735. Appellant has not preserved error on this issue for our review. *Id.* Accordingly, we overrule Appellant's first issue.

<u>Testimony of Toxicologist and Sufficiency
of Evidence Regarding Alcohol</u>

In his second issue, Appellant complains about the trial court's admission of the testimony of the toxicologist who testified at the hearing by telephone. Appellant contends that the trial court erred in allowing the witness to testify by telephone, and because such evidence was improperly admitted, the evidence was insufficient to support a finding that Appellant violated the terms of his community supervision by ingesting alcohol.

When reviewing the sufficiency of the evidence, the reviewing court must consider all evidence in the record, regardless of whether that evidence was

15

admissible or inadmissible. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (citing *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); and *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).

The State argues that Appellant's challenge regarding the evidence pertaining to alcohol "is based entirely on arguments regarding the admissibility of the evidence, and he does not complain that the evidence actually admitted was insufficient." To the extent Appellant is challenging the admission of such evidence at trial, we review a trial court's decision to admit evidence under an abuse of discretion standard. *See Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) (citing *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011)). A trial court has broad discretion regarding the mode and order of examining witnesses. *See* Tex. R. Evid. 611; *Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005). This Court has previously acknowledged that a trial court has the discretion to permit remote testimony in certain instances without violating the Sixth Amendment, and has further acknowledged that the application of the Confrontation Clause to a punishment hearing remains an open question. *See Rivera v. State*, 381 S.W.3d 710, 713 (Tex. App.—Beaumont 2012, pet. ref'd); *Peluso v. State*, No. 09-11-00049-CR, 2012 Tex. App. LEXIS 5122, at **4-7 (Tex.

16

App.—Beaumont June 27, 2012, pet. ref'd) (mem. op., not designated for publication). We need not engage in a Sixth Amendment or Confrontation Clause analysis in this matter because Appellant did not make any such objections at trial, nor does he include such in his appellate brief. *See* Tex. R. App. P. 33.1(a); *Yazdchi*, 428 S.W.3d at 844 (failure to make a timely objection at trial waives error for appeal).

The only objection raised by Appellant at trial and now on appeal is that he was entitled to "previous notice[]" if the State intended to present the witness's testimony by telephone. Appellant argues on appeal that Article 39.02 authorized the State to admit a witness's testimony by deposition, and Article 39.04 of the Texas Code of Criminal Procedure explains that the taking of depositions shall be governed by the rules prescribed in civil cases. Appellant contends that the civil rules require a party to take a deposition of the witness as a prerequisite to the use of telephonic testimony, and therefore the State was forbidden from utilizing telephonic testimony in the revocation hearing without first complying with the deposition requirement contained in the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 30.012 (West 2015). Appellant further cites to *Frangias v. State*, 450 S.W.3d 125 (Tex. Crim. App. 2013), to support Appellant's

conclusion that the trial court erred in allowing the State to use telephonic testimony at the hearing.

*Frangias* concerned a claim of ineffective assistance of counsel where the defendant's trial counsel sought to have an out-of-town witness testify by telephone and trial counsel had not deposed the witness prior to trial or sought a continuance to secure the witness's testimony. *See generally id.* The Court of Criminal Appeals explained that, although the witness was "the only witness who could directly corroborate the [defendant's] account[,]" defendant's trial counsel had not obtained a sworn affidavit from the witness and had not offered any formal proof that the witness was incapable of travelling to trial. *Id.* at 137, 138. The Court further concluded that trial counsel's own affidavits showed that defense counsel should have been able to meet the standard for admitting testimony by deposition or for requesting a continuance. *Id.* at 140-44. The Court determined that the intermediate appellate court erred in concluding that trial counsel's performance was not deficient and remanded the case for a determination of prejudice under *Strickland*. *Id.* at 144 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

We find *Frangias* inapposite. The State's use of telephonic testimony in the case at bar was unrelated to a claim of ineffective assistance or to the

18

guilt/innocence determination on which Lawrence's original conviction was based. Rather, the telephonic testimony in this case occurred in a revocation proceeding. We note that the record also includes Lawrence's sworn and signed Stipulation to Evidence, wherein he "waive[d] the appearance, confrontation and cross-examination of witnesses and consent[ed] to the introduction of testimony by oral stipulations, affidavits, written statements and other documentary evidence[.]"[3] Accordingly, by this Stipulation, Appellant waived any challenge to the appearance of John Martin and also waived any challenge to the toxicology report, including Appellant's argument on appeal that the toxicology report was not properly authenticated.[4]

The Judgment states that the trial court granted the State's motion to revoke "[a]fter hearing the State's motion, Defendant's plea, the evidence submitted, and

---

[3] We also note that, in the sworn and signed Stipulation of Evidence, Appellant "agree[d] and confess[ed] that all the acts and allegations in Paragraphs I [and] II" of the "State's Original Motion to Revoke Community Supervision filed with the District Clerk on or about February 18, 2016," are "true and correct, and all of said conduct constituted violations of the conditions of my community supervision and occurred during the period in which the conditions of my community supervision were mandatory." The Stipulation is signed by Appellant and his trial attorney.

[4] Despite the presence in the record of a signed Stipulation of Evidence, during the trial Appellant objected to State's Exhibit 1, the toxicology report, on the basis that it had not been properly authenticated. The trial court overruled the objection.

reviewing the record[.]" The Stipulation constituted a judicial admission and Appellant thereby "waived his right to put the government to its proof" as to the evidence to which Appellant stipulated. *See Bryant v. State*, 187 S.W.3d 397, 402 (Tex. Crim. App. 2005).[5] Therefore, we conclude that the evidence was sufficient to establish that Lawrence violated a condition of community supervision and the trial court did not abuse its discretion in granting the State's motion to revoke. *See Rickels*, 202 S.W.3d at 763-64.

We overrule Appellant's second issue.

### Nonpayment of Restitution

Appellant contends in his third issue that there was legally and factually insufficient evidence to support the trial court's decision to revoke his community supervision regarding non-payment of restitution because the State failed to prove that Appellant was able to pay and did not pay, and that the State failed to establish that Appellant acted intentionally. And, in his fourth issue, Appellant contends that it is fundamentally unfair and violates his Fourteenth Amendment right to equal protection to revoke his community supervision because of his inability to pay. We need not address issues three and four because a single violation of a term of community supervision is sufficient to support the trial court's decision to revoke

---

[5] Neither Appellant nor the State discuss or reference the Stipulation of Evidence in appellate briefs.

community supervision. *See Moore*, 605 S.W.2d at 926; *Bessard*, 464 S.W.3d at 429. We have already concluded herein that the evidence was sufficient to establish that Appellant violated a condition of his community supervision by ingesting or consuming alcohol as alleged by the State. We overrule issues three and four.

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 11, 2016
Opinion Delivered December 7, 2016
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.